## DAMAGES FOR INEXCUSABLE SEIZURE OF HOUSEHOLD GOODS.

Common Pleas Court of Hamilton County.

JENNIE FULTON v. SPEAR & COMPANY.

Decided, June 14, 1912.

*Unjustifiable Seizure by an Installment House—Measure of Damages Therefor—Prejudice of Jury—Charge of Court—Grounds for Remittitur.*

1. The entering of plaintiff's apartments by agents of an installment house, and the seizing and carrying away of part of her household furniture, through mistake but without justification, was an act which was calculated to prejudice a jury impanneled to fix the damages suffered by plaintiff thereby; and where the verdict so returned was for $3,500, it must be regarded as excessive, and it is the duty of the trial court to reduce by remittitur the amount thus fixed.

2. In the case at bar the plaintiff was in delicate health, and the damages suffered by her from humiliation and nervous shock may reasonably be fixed at $1,000, while there may properly be added thereto $500 as punitive damages and $500 as counsel fees, making $2,000 the total allowance.

*Bolsinger, Pink & Hawke,* for plaintiff.
*Johnson & Levy,* contra.

GORMAN, J.

On motion for a new trial.

This is an action by Jennie Fulton against Spear & Company to recover damages for the wrongful taking of part of her furniture without process of law, and without any justification therefor. The evidence disclosed that the plaintiff lived in two rooms, at 718 West Fifth street, during the year 1910; that prior to November 23, 1910, defendant sent several postal cards to her threatening to take her furniture if she did not appear and pay certain delinquencies which they claimed to be owing from her. On the 22d of November, 1910, two employes of the defendant

company attempted to force an entrance into plaintiff's rooms in her absence, and attracted the attention of neighbors living in the same building with plaintiff. On the 23d of November, 1910, two employes of the defendant company appeared with a wagon, at about 7:30 A. M., before the plaintiff was fully dressed, came to her rooms and demanded a dresser and bed which they claimed she had bought from the defendant and for which she had failed to fully pay. Plaintiff in order to satisfy these men that the furniture was not bought of Spear & Company, asked them if they could identify the furniture, and they said they could. The men examined the furniture and found that it had not been bought of Spear & Company; one piece had been bought at Indianapolis several years ago, and another piece at Conroy's, and the stencil marks of the dealers were on these pieces of furniture. The employes then left saying that they would call up Spear & Company and tell them that the furniture did not belong to them. Shortly thereafter they returned to plaintiff's rooms, took the mattress off the bed and took away the bed and the dresser after taking out all her clothing from the dresser.

The evidence showed that plaintiff never dealt with Spear & Company; the furniture did not belong to them; that she was ill at the time and claimed that as a result of taking the furniture she was unable to attend to her vocation for a period of eleven weeks; that she suffered from tuberculosis and that the nervous shock, the humiliation and indignity upon her had aggravated her illness.

The defendant admitted the taking of the furniture, and that it had no right to take the same, but claimed that it had made a mistake.

In the opinion of the court the defendant was guilty of a gross violation of the plaintiff's civil rights. There was no excuse or justification for defendant's conduct. It had no right to take the furniture that had not been bought from it. Its agents had called at this house to inquire for one Mrs. Stevens, whom they claimed had purchased furniture from Spear & Company, but plaintiff had informed these agents that her name was Fulton; that she had not dealt with Spear & Company, and was not acquainted with Mrs. Stevens. There was evidence tending

further to show that the agents of the defendant had inquired of the neighbors, in the building where plaintiff lived, about Mrs. Stevens, and had been told that she was not then living there. The defendant company's agents simply took the law into their own hands, and with a reckless disregard of the plaintiff's rights, invaded her rooms and took away her furniture without having any semblance of claim to it and without any legal or moral right on its side.

The court charged the jury in substance that plaintiff was entitled to recover compensatory damages, and that if the jury found that there was malice or insult involved in the conduct of the defendant company, they might go beyond compensatory damages and assess punitive damages, the amount of which would be left to their sound judgment and discretion. The court further charged the jury that, if they found that the element of malice, fraud or insult had entered into the defendant's conduct, they might award plaintiff not only compensatory damages and punitive damages, but also reasonable counsel fees for the prosecution of the case; the amount thereof was left to the sound judgment and discretion of the jury. The jury returned a verdict for plaintiff for $3,500, and a motion is now made to set aside this verdict and grant a new trial.

All the statutory grounds for a new trial are set out in the motion.

Practically the only claim made by the defendant, in the argument of its counsel on the motion for a new trial, is that the verdict is excessive, appearing to have been given under the influence of passion or prejudice. Counsel for the defendant admit that the court correctly charged the law as to the right of the plaintiff to recover, and as to the damages and the measure thereof. The defendant in the trial of the case and the admissions before the jury, and in counsel's argument, admitted that the only question involved in the case was the amount of the damages, admitting the plaintiff's right to recover. It was urged that while the charge of the court was sound law, nevertheless, the charge was not evenly balanced and that certain language employed by the court in his charge to the jury had a tendency

to prejudice the jury against the defendant, or to arouse their passions against the defendant.

The language complained of was as follows:

"And under the Constitution it matters not what his condition may be, or has been, regardless of race, color or previous condition of servitude, every person stands on an equality before the law, and is entitled to the same fair treatment, whether he be a millionaire or a pauper. The plaintiff's place of abode, although it be ever so humble or small, is her home. The rooms in the building where she lived were just as much her home as though she owned and resided in a magnificent mansion, located in our most fashionable and exclusive suburb; and she was entitled, under the law, to the same privacy and security and protection in her house, person and property, as though she had been the greatest person in the land, as though she were the President of the United States. Her rooms were her castle, and within their limits none might intrude or forcibly enter without her consent or warrant or authority of law. This place of her abode was a sacred place for her and her family, and for any invasion thereof by defendant, its agents or employes, without having either a legal warrant to enter, or an entry for business purposes, or upon her invitation as her guest, or by her consent, the defendant would be guilty of a violation of her legal rights, and liable to her in damages for all the natural and proximate consequences which resulted from the wrongful invasion of her house. * * *

"It was the duty of the defendant company through its officers and agents not to enter into the house or the rooms of the plaintiff without her consent, or unless they had a warrant or authority of law to do so. If it held a search warrant, they might enter with an officer; or if they were there upon lawful business, they might go there and make a demand for money that was owing, or in furtherance of any other business transaction, but even then they would have no right to enter without the consent or the invitation of the plaintiff, express or implied.

"Now, in this case, gentlemen of the jury, if you find in favor of the plaintiff—and you must find in favor of the plaintiff for some amount—because as I stated, the defendant admits that it wrongfully entered her house, you will then consider the question of her damages—what damages she is entitled to recover. She is entitled to recover the natural and proximate damages, or the damages which were the result of the natural and probable consequences of the defendant's wrongful acts."

The court is of the opinion that no error was made in employing the language above quoted. It is the law of the land, and if it is not it should be, that all persons high or low, rich or poor, great or small, regardless of their positions or condition, stand equal before the law, and are entitled to the equal protection of the law. Whether the plaintiff's feelings were as much outraged as would be those of a woman brought up in luxury and refinement, was a question for the jury to determine under all the evidence and circumstances of the case. The court is not disposed to disturb the verdict on the ground that any error was committed in the use of the language employed in the charge to the jury. It is possible that the language employed may have had a tendency to arouse the feelings of the jurors against the defendant because of its unjustifiable conduct.

The amount of the verdict seems to the court to be very large in view of the injuries shown to have been suffered by the plaintiff. Taking the amount of the verdict, the evidence in the case and all the circumstances, the fact that the defendant was selling furniture on the installment plan, and that a prejudice might well have existed in the minds of the jurors against the defendant because of the character of its business and the conduct of its managers, I am of the opinion that substantial justice would have been awarded to the plaintiff if a verdict of $2,000 had been rendered in this case. It appears to the court that there has been an excessive verdict in the case and that this excessive verdict under all the evidence and circumstances must be attributed either to passion or prejudice. It is the duty of the court to protect litigants against unjust verdicts and to see to it that substantial justice has been done in the trial of the case. In this case I am of the opinion that $1,000 would have been a fair compensation for the plaintiff on account of her compensatory damages; that $500 would have been a good round sum to allow as punitive damages, and $500 a good round sum for her counsel fees, making a total of $2,000. I think that a judgment of $2,000 would not only deter the defendant in this case from committing a like offense hereafter, but would have a wholesome and salutary effect and influence upon other persons, partnerships

and corporations who might be disposed to follow the example of the defendant in this case. If the plaintiff will accept a remittitur of $1,500 in this case, the motion for a new trial will be overruled and a judgment entered in the sum of $2,000.